Rapaport Law Firm, PLLC | Attorneys at Law | 80 Eighth Avenue | Suite 206 | New York, NY 10011 | Tel 212.382.1600 | Fax 212.382.0920 | www.rapaportlaw.com

**Rapaport Law Firm**

Marc A. Rapaport*
Tel (212) 382-1600
Fax (212) 382-0920
mrapaport@rapaportlaw.com

*Member NY & NJ Bars

February 28, 2025

**BY ECF**

Magistrate Judge Lara K. Eshkenazi
United States Courthouse
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    Mason Davis v. GoGo Bus Tours Inc. d/b/a 2Go Bus et al.
            Case No. 1:24-cv-05369(KAM)(LKE)

Dear Judge Eshkenazi:

    We represent plaintiff, Mason Davis ("Plaintiff"), in the above-referenced matter, which involves claims for wage and hour violations arising from Plaintiff's employment as a paratransit driver for Defendants, GoGo Bus Tours Inc d/b/a 2Go Bus ("GoGo Bus") and Jay Lin ("Lin") (collectively, the "Defendants"). We write jointly with counsel for Defendants to request that the Court approve the settlement agreement (the "Agreement") reached by the parties herein as a fair and reasonable resolution of this matter. The fully-executed Agreement is submitted simultaneously with this letter as Exhibit 1 hereto. Plaintiff's counsel further requests that the Court approve our firm's attorney's fees and costs.

    The Agreement reflects a desire by the parties to fully and finally settle Plaintiff's Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") claims. The Agreement provides that Defendants agree to pay Plaintiff and Plaintiff's counsel the total sum of $35,000, resulting in a net payment to Plaintiff in the amount of $22,939.29. Plaintiff is confident that the net settlement payment to Plaintiff compensates him for the full amount of his potential (best-case) recovery for unpaid overtime wages, plus a portion of his potential liquidated damages. As explained in further detail below, the parties respectfully aver that the Agreement is fair, reasonable, and equitable. Although Plaintiff filed this case as a putative collective and class action, Plaintiff did not move for conditional collective or class certification, and the Agreement only resolves Plaintiff's individual claims.

Honorable Lara K. Eshkenazi
United States Magistrate Judge
February 28, 2025

## I. Introduction.

As Plaintiff's claims arise, in part, under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, the Agreement must be approved by this Court. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). In evaluating whether a proposed settlement is fair and reasonable, "a court should consider the totality of circumstances including, but not limited to, the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-336, (S.D.N.Y. 2012) (citations and quotation marks omitted). As set forth below, the parties believe that the Agreement satisfies all of the foregoing factors.

## II. Summary of Plaintiff's Wage Claims and Damage Calculations.

### 1. Plaintiff's Overtime Claims.

Plaintiff's claims arose from Defendants' failure to properly pay overtime compensation during Plaintiff's employment as a paratransit driver from approximately November 2022 through approximately April 2024. *See* Amended Complaint, ECF No. 13 ("Am. Cmpl.") ¶¶ 64. Plaintiff's job duties principally involved transporting disabled individuals to and from various locations within New York City. *Id.* ¶ 54.

As an evening shift worker, Plaintiff's daily work schedule began at 4:15 p.m., and he was scheduled to return to the Defendants' Brooklyn garage facility at 1:30 a.m. *Id.* ¶¶ 8, 64. However, the amount of time it took for Plaintiff to complete his scheduled routes varied each evening based on traffic conditions and other factors beyond his control. *Id.* ¶ 67. Consequently, Plaintiff's actual shifts often continued past 1:30 a.m. In other instances, Plaintiff was able to end his workday early. Plaintiff frequently worked six days (and, on occasion, seven days) per week. *Id.* ¶ 70. As a result of the foregoing, Plaintiff regularly worked more than forty (40) hours per week, which is reflected in his earnings statements. *Id.* ¶¶ 71, 72. Plaintiff's earnings statements also reflect Defendants' practice of paying Plaintiff his regular (straight-time) hourly pay rate ($27.00) for all hours worked, including the hours that Plaintiff worked in excess of the first 40 per week. Defendants continued this practice until late February 2024.

In addition, for an extended period of time, Defendants paid Plaintiff the same amount per shift, based on the incorrect assumption that Plaintiff worked the same number of hours each shift. However, as noted above, in actual practice, the length of each shift varied. Plaintiff was not compensated for the hours that he worked after 1:30 a.m. Defendants continued this practice until late February 2024. Plaintiff alleges that as a result of Defendants' foregoing practice, there were certain days when he received no wages whatsoever for the amount time he worked past 1:30 a.m.

2

Honorable Lara K. Eshkenazi
United States Magistrate Judge
February 28, 2025

    **2.**    **Plaintiff's Untimely Pay Claims.**

The Amended Complaint's Fourth Cause of Action alleges that Defendants failed to comply with § 191(1)(a)(i) of the NYLL, which requires weekly payment of wages to manual workers. Potentially, Plaintiff could recover liquidated damages for the first week of each two-week pay period.

    **2.**    **Plaintiff's Potential (Best-Case) Damages.**

(a) <u>Potential Overtime Damages</u>.

After analyzing the wage records and pay statements issued to Plaintiff by Defendants, Plaintiff estimates that, in the best-case analysis, he could potentially recover unpaid overtime in the amount of $13,653.74, not including liquidated damages and interest. There are two components to Plaintiff's overtime damages, namely: (a) the amount of time Plaintiff worked on weekends; and (b) the number of hours that he worked past the scheduled end (1:30 a.m.) of his shifts.

*Weekend Overtime Damages.*

Until late February 2024, Plaintiff was compensated for his weekend overtime hours at his regular hourly rate of pay ($27.00). Based on Plaintiff's earnings statements and applying a half-time damages analysis, Plaintiff has calculated that he is owed premium overtime pay (half-time) damages for a total of 621.39 hours, in the amount of $8,388.74 ($27.00 x .5 x 621.39 hours = $8,388.74).

*Post-Shift Overtime Damages.*

Calculating the amount of Plaintiff's unpaid overtime damages for the hours that he worked beyond 1:30 a.m. (the scheduled end of the evening shift) is more difficult, because Plaintiff was allowed to leave early when he finished his routes before 1:30 a.m. Plaintiff conservatively alleges that on average, Defendants' practice of paying the same amount per shift regardless of the actual hours worked led to 2 hours of uncompensated work per week. Based on the foregoing, Plaintiff alleges that he is owed $5,265 ($27 x 1.5 = $40.50 x 2 = $81 x 65 weeks) for his post-shift work hours.

(b) <u>Liquidated Damages for Untimely Wages (NYLL §§ 190(4), 191(1)(a)(i), (ii))</u>

Plaintiff alleges that he was a manual worker within the meaning of NYLL § 190(4), and that he is entitled to liquidated damages equal to the sum of his wages for the first week of every two-week pay period. For the reasons explained below[1], there is considerable uncertainty regarding the viability of Plaintiff's late wages claim because it is unclear that Plaintiff qualifies

---

[1] Prior to reaching this Agreement, Defendants filed a pre-motion letter regarding their proposed motion to dismiss Plaintiff's NYLL § 191 claim for late wage payments, and Plaintiff filed their response. *See* ECF Nos. 14, 15.

3

Honorable Lara K. Eshkenazi
United States Magistrate Judge
February 28, 2025

as a manual worker under NYLL § 190(4), and the legal question of whether workers have a private right of action to bring late wages claims under NYLL § 191. If Plaintiff were to prevail on this claim, he could potentially recover liquidated damages of approximately $48,026.

### 3. Defendants' Position.

Defendants vigorously deny all of the claims alleged by Plaintiff in the Complaint including, but not limited to, the number of hours that Plaintiff purportedly worked, the way in which he was paid, that Plaintiff is entitled to overtime damages, that Plaintiff was a "manual worker" within the meaning of NYLL §190(4), that Defendants acted "willfully" in violation of the FLSA and NYLL, and that Plaintiff would be entitled to any liquidated damages. It remains Defendant's position that Plaintiff was paid on a timely basis for all hours worked. Notwithstanding, NYLL §§ 191 and 198 do not afford a private right of action for untimely paid full wages. As such, Plaintiff would not be able to establish a cause of action for untimely payment of wages pursuant to the Second Department's recent decision in *Grant v. Global Aircraft Dispatch, Inc*., N.Y.S.3d, 2024 WL 172900 (2d Dep't Jan. 17, 2024).

For those reasons, Defendants believed that Plaintiff's only plausible claim was for off-the-clock work, which Defendants were prepared to rigorously dispute with witness testimony that refute most, if not all of the alleged overtime hours Plaintiff claims he worked and was not paid for. However, Defendants believe that the settlement is fair and reasonable because it will enable the parties to avoid further anticipated burdens and expenses, including motion practice, trial, and counsel fees, which would be significant if the case were to go to trial. Additionally, the Defendants have considered the fee shifting nature of the FLSA for attorneys' fees if Plaintiff were to prevail, which could result in a large fee award, even if damages were minimal. Furthermore, the Defendants believe the proposed settlement is fair and reasonable because the settlement was negotiated at arms-length by competent counsel, prior to intervention by the EDNY mediation panel.

### III. The Agreement is Fair and Reasonable.

The parties were able to reach an agreement before incurring further costs and the stress of depositions, motion practice, and trial. *See Burgos v. San Miguel Transp., Inc.*, 2016 U.S. Dist. LEXIS 166248, *6, 2016 WL 7015760 (S.D.N.Y. Dec. 1, 2016) (citing the relatively early stage of the case as one of the factors supporting the fairness of a settlement that was substantially below the amount that plaintiff initially contemplated). Furthermore, here, as in *Burgos*, there is no assurance that Plaintiff would be awarded liquidated damages under FLSA or NYLL if this matter were to proceed to trial.

There is uncertainty regarding Plaintiff's claim for liquidated damages pursuant to NYLL § 191 based on Defendants' practice of paying wages bi-weekly, rather than weekly. Defendants

argue that the Court should disregard the First Department's decision in *Vega v. CM & Associates Construction Management, LLC*, 107 N.Y.S.3d 286 (1st Dept. 2019), which held that workers have a private right of action for untimely wage payments. *See* Defs. Letter Motion, ECF No. 14. Defendants argue that instead, the Court should follow the Second Department's decision, *Grant v. Global Aircraft Dispatch, Inc.*, 223 A.D.3d 712, 204 N.Y.S.3d 117, 125 (2d Dept. 2024), which reached the opposite conclusion. *Id.* Although the majority of courts in the Eastern and Southern Districts have found *Vega* to be more persuasive, the ultimate resolution of this disputed legal issue may hinge on whether the New York Court of Appeals rules that manual workers have a private right of action to enforce the weekly pay requirement.

Plaintiff also faces the uncertainty regarding whether he will be found to be a manual worker, as that term is understood under NYLL § 190(4). *See Balderramo v. Go N.Y. Tours Inc.*, 668 F. Supp. 3d 207, 226-227 (S.D.N.Y. 2023) (citing *Creative Transportation Inc.*, PR 49-88, N.Y. Indus. Brd. App. Aug. 9, 1991) (workers with specialized training and having health and welfare responsibilities, such as bus drivers transporting handicapped children, are not manual laborers under NYLL § 190(4)).

The Agreement represents a reasonable compromise. After deducting legal fees and litigation costs, the Agreement provides Plaintiff with a net settlement amount of $22,939.29. This amount compensates Plaintiff for all of his estimated unpaid overtime, plus the majority of the potential liquidated damages relating to unpaid overtime. In other words, in entering into the Agreement, Plaintiff is foregoing a small portion of his potential liquidated damages for unpaid overtime, and potential damages for untimely wages.

In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, 2008 WL 724155 at *1 (E.D.N.Y. 2008) (*quoting Lynn's Food Stores v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). Here, there is no question that the settlement did not come about because of "overreaching" by the employer. Plaintiff is receiving $22,939.29, which compensates him for all of his unpaid overtime wages, and $9,285.55 of the potential $13,653.74 in liquidated damages relating to his unpaid overtime. Courts regularly approve far more significant compromises. *See*, e.g., *Santiago v. Agadjani*, 2024 U.S. Dist. LEXIS 186484, *10 (E.D.N.Y. Oct. 11, 2024) (collecting cases where judges have found recoveries of 13% and 15% to be reasonable).

### V. Plaintiff's Counsel's Application for Attorneys' Fees.

Under both the FLSA and NYLL, Plaintiff is entitled to recover attorneys' fees and costs. Attorneys' fees in FLSA settlements are examined to ensure that the interests of plaintiff's counsel in his or her own compensation did not have an adverse impact on the extent of relief counsel obtained for the client. *See Wolinsky v. Scholastic*, 900 F.Supp.2d 332, 336 (S.D.N.Y. 2012).

Honorable Lara K. Eshkenazi
United States Magistrate Judge
February 28, 2025

Plaintiff's counsel represents Plaintiff on a contingent basis, pursuant to a retainer agreement that provides for attorney's fees of one-third of the net recovery. A copy of Plaintiff's counsel's retainer agreement with Plaintiff is attached hereto as Exhibit 2. Our firm's time spent on this matter and the expenses that we reasonably incurred are set forth in the accurate and contemporaneous billing records attached hereto as Exhibit 3. Invoices/receipts for Rapaport Law Firm's expenses and costs are attached hereto as Exhibit 4.

Contingency fees of one-third are routinely approved in this Circuit. *See Sierra v. Mid City Gym and Tanning LLC*, No. 16 Civ. 2892, 2017 WL 4862070 *4 (S.D.N.Y. Oct. 25, 2017); *Gaspar v. Personal Touch Moving, Inc.,* No. 13 Civ. 8187, 2015 WL 7871036 *2 (S.D.N.Y. Dec. 3, 2015). Of the total amount ($12,060.71) payable to Plaintiff's counsel, $762.25 is for expenses (primarily consisting of filing fees and service of process). The balance, $11,298.46, is for legal fees. Plaintiff's counsel seeks thirty-three percent (33%) of the net settlement (*i.e.*, 33% of $34,237.75 = $11,298.46). All of the requested expenses were necessary for the prosecution of Plaintiff's claims.

A lodestar "cross check" comparing the fees generated by the percentage method with our documented hours (*see* Exs. 3, 4) supports the reasonableness of Plaintiff's counsel's legal fees request. The sum of our firm's lodestar calculation, which is based on conservative hourly rates, is $12,855. The amount of legal fees that we seek under the percentage method (33% of the net settlement) is less than the lodestar amount. "Courts regularly award lodestar multipliers from two to six times the lodestar." *See Johnson v. Brennan*, 2011 U.S. Dist. LEXIS 105775, 2011 WL 4357376 at *20 (S.D.N.Y. Sept. 16, 2011) (collecting cases). Here, there is no multiplier.

The attorneys and staff at Rapaport Law Firm who were involved in this case, and whose time is reflected in the attached billing records, are:

1. **<u>Marc Rapaport</u>**

I am the managing member of Rapaport Law Firm, which began as my solo practice in 1995. I have more than twenty-five years of experience litigating employment matters, including matters touching upon nearly every aspect of wage and hour law, on behalf of employees in New York. I received a J.D. from Georgetown University Law Center in 1992. Thereafter, I worked as a Staff Attorney with the United States Department of Justice in Washington, D.C. I represent employees in a broad range of discrimination and wage/hour matters. I am an active member of the National Employment Lawyers Association and the National Employment Lawyers Association New York.

I began practicing employment law in 1995. I have more than twenty-eight years of experience litigating employment matters on behalf of employees in New York. I have endeavored to represent immigrant and low-wage workers who often find it difficult to obtain skilled legal representation. I have handled a broad spectrum of FLSA cases, including cases on behalf of individual workers, as well as collective and class actions. For example, I was lead counsel for the FLSA collective and R. 23 class in *Contrera, et al. v. Langer, et al,* 16-cv-03851

6

Honorable Lara K. Eshkenazi
United States Magistrate Judge
February 28, 2025

(SDNY), which resulted in a $7.4 Million class settlement on behalf of several hundred employees at apartment buildings in New York City. My lodestar calculation is based on my requested hourly rate of $450.00, which is well within the range of what judges in this District have approved for wage and hour attorneys with similar levels of experience. *See, e.g., Palaguachi v. All City Remodeling, Inc.*, 2018 U.S. Dist. LEXIS 241268, at *6 (S.D.N.Y. Apr. 20, 2018) (approving hourly rate of $450.00 for partner in FLSA matter). My requested hourly rate is significantly below the hourly rates I currently charge (beginning at $600.00) for non-contingent cases.

**2. Karina Gulfo**

Karina Gulfo has been a legal professional for more than a decade. She began at Rapaport Law Firm as a paralegal in August 2018. Ms. Gulfo has performed damage calculations in dozens of FLSA/NYLL cases since she joined Rapaport Law Firm. She is the primary point of contact for our firm's clients. Ms. Gulfo has played the same, crucial role for our firm's clients in at least a dozen other FLSA matters, including collective and class action cases involving hundreds of workers. Prior to joining our firm, Ms. Gulfo worked as a paralegal for a law firm in Bronx County, providing support in both criminal and civil matters. The hourly rate for Ms. Gulfo ($115.00) is amply justified by her experience.

***

We respectfully request that the Court approve the Agreement, as well as the amount of legal fees requested herein. Should Your Honor have concerns regarding this settlement, the parties are happy to discuss them. The parties thank the Court for its attention to this matter.

Respectfully yours,

/s/

Marc A. Rapaport

Encs. (Exhibits 1 – 4)

cc:     (*Via ECF only*)